**Opinion issued April 11, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

### NO. 01-13-00880-CV
### NO. 01-13-00883-CV
### NO. 01-13-00884-CV

————————————

## IN THE INTEREST OF D.W., J.S.B., E.B., CHILDREN

---

### On Appeal from the 310th District Court
### Harris County, Texas
### Trial Court Case Nos. 2012-05387J, 2011-38676, and 2012-55490[1]

---

## MEMORANDUM OPINION

In this accelerated appeal, appellant, Lovezella Shantell Bartholomew, challenges the trial court's order, entered after a bench trial, terminating her

---

[1]     Appellate cause number 01-13-00880-CV; trial court case number 2012-05387J.
        Appellate cause number 01-13-00883-CV; trial court case number 2011-38676.
        Appellate cause number 01-13-00884-CV; trial court case number 2012-55490.

parental rights to her three minor children.[2]  In her first issue, appellant contends that the trial court erred in temporarily appointing appellee, the Department of Family and Protective Services ("DFPS"), the managing conservator of the children.  In her second through fifth issues, appellant contends that the evidence is legally and factually insufficient to support the trial court's findings that she knowingly engaged in conduct, or knowingly placed the children with persons who engaged in conduct, that endangered their physical or emotional well-being,[3] failed to support the children,[4] constructively abandoned the children,[5] and failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children.[6]

We reverse and render in part, and dismiss in part.

## Background

On September 21, 2012, DFPS filed a petition seeking managing conservatorship and termination of appellant's parental rights to her three minor children.  By affidavit attached to its petition, DFPS Investigator Sam Hamilton testified that appellant had been arrested "for making false reports" regarding the

---

[2]     Although the trial court also terminated the parental rights of the children's fathers, they are not parties to this appeal.

[3]     *See* TEX. FAM. CODE ANN. § 161.001(1)(E) (Vernon 2014).

[4]     *See id.* § 161.001(1)(F).

[5]     *See id.* § 161.001(1)(N).

[6]     *See id.* § 161.001(1)(O).

father of one of the children ("Father"); was "a suspect" in the "burning down [of Father's] family home"; and had left her three children, ages four years, two years, and three months, home alone while she "went and burned [Father's] home down." The trial court entered an emergency order for the protection of the children, finding that there existed a continuing danger to their physical health and safety. After a hearing, the trial court appointed DFPS as the temporary managing conservator of the children and ordered appellant to comply with the requirements set out in a DFPS Family Service Plan ("FSP").

At the November 13, 2012 status hearing, DFPS Caseworker Damion Green testified that an FSP had been completed and filed with the trial court, the goal of the FSP was family re-unification, and the FSP required appellant to "participate in a psychological [assessment] and follow all recommendations"; complete anger management, domestic violence, and parenting classes; participate in all court hearings; and "attend any and all visitations at the CPS office." Green had "gone over" the FSP with appellant and "fe[lt] that she understood it." During cross-examination, Green, when asked whether "everything . . . within the [FSP] ha[d] been agreed upon between the parties," replied in the affirmative. Appellant testified that she had signed the FSP, and Green asked the trial court to approve it.

After the hearing, the trial court issued an order in which it found that appellant had reviewed and understood the FSP, and it advised appellant that

3

"unless she [was] willing and able to provide the children with a safe environment, . . . her parental and custodial duties and rights may be subject to restriction or to termination or the children may not be returned to her." The trial court "ordered that the [FSP] as to [appellant], filed with [the trial court] on or before the date of its order, [was] approved in full and incorporated into the order as if set out verbatim," and it ordered appellant "to timely comply."

At the July 23, 2013 status hearing, DFPS Caseworker Latoya Porter testified that appellant had not completed substance abuse counseling or individual therapy, and she had not visited the children regularly. After the hearing, the trial court issued an order in which it stated that it had evaluated appellant's compliance with the FSP and she had yet to complete "all services."

At a September 10, 2013 status hearing, DFPS Caseworker Sonia Inocencio testified that appellant had missed her last three drug tests and had been asked to begin outpatient treatment following her substance abuse assessment. Appellant admitted that she had missed some of her drug tests, but asserted her absence was unintentional. The trial court ordered appellant to comply with all requirements of the FSP and again admonished appellant that if she did not follow its orders, her parental and custodian rights could be "subject to severe restriction or termination." After the hearing, the trial court again issued an order stating that it

4

had evaluated appellant's compliance with the FSP and she had yet to complete "all services."

At trial, Porter testified that the children came into DFPS care after appellant was arrested for having filed a false police report against Father and "did not give adequate information" about where to temporarily place the children. Appellant was also "suspected" of having set fire to Father's home. The fire was of such severity that the family inside the home had to be rescued through the windows. Porter explained that appellant had a history with DFPS and "a lot" of domestic violence in her home. Porter opined that appellant's parental rights to all three children should be terminated because her conduct endangered their physical and emotional wellbeing.

Porter further testified that appellant had completed some, but "not all," of the FSP requirements. She completed the psychosocial assessment, parenting and domestic violence classes, and a substance abuse assessment. And she had participated in individual therapy and random drug testing. However, appellant failed a drug test "in the past," although the results of her drug tests conducted on November 21, 2012, December 11 and 18, 2012, and July 17, 2013 were negative. She noted that, as of the time of trial in September 2013, appellant had not visited the children since March. However, appellant had remained in contact with Porter through July 2013.

Porter explained that DFPS had located a family member who was willing to take the children and the member's "information has been submitted." Because appellant had not provided information regarding any local relatives, however, the children were placed with a foster family, which had "suitable" housing and income, and was meeting the children's needs. One child was awaiting hernia surgery, and another was receiving medication and counseling for attention-deficit/hyperactivity disorder. The foster family and the children had become attached, and the children were "thriving." Porter opined that it was in the children's best interests for appellant's parental rights to be terminated.

## Temporary Order

In her first issue, appellant argues that "[t]he trial court abused its discretion in naming DFPS as the children's temporary sole managing [conservator] because the evidence adduced at the show cause hearing was legally and factually insufficient to support the required findings." *See* TEX. FAM. CODE ANN. § 262.201 (Vernon 2014).

Because a final decree has been entered in each of the children's cases, the temporary orders are moot and therefore not subject to review on appeal. *See F.A.B. v. Dep't of Family and Protective Servs.*, No. 01-10-00930-CV, 2012 WL 5310024, at *6 (Tex. App.—Houston [1st Dist.] Oct. 25, 2012, no pet.) (mem. op.); *L.F. v. Dep't of Family & Protective Servs.*, No. 01–10–01148–CV, 2012 WL

6

1564547, at *14 (Tex. App.—Houston [1st Dist.] May 3, 2012, pet. denied) (mem. op.) (citing *Wright v. Wenzel*, 749 S.W.2d 228, 234 (Tex. App.—Houston [1st Dist.] 1988, no writ) (declining to address issues related to temporary orders because trial court had entered final order)). Accordingly, we dismiss appellant's first issue as moot.

### Sufficiency of the Evidence

In her second through fifth issues, appellant argues that the trial court erred in terminating her parental rights as to each child because the evidence is legally and factually insufficient to support the trial court's findings that she engaged in conduct, or knowingly placed the children with persons who engaged in conduct, that endangered their physical or emotional well-being, failed to support the children, constructively abandoned the children, and failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children. *See* TEX. FAM. CODE ANN. § 161.001(1)(E), (F), (N), (O) (Vernon 2014). Appellant does not challenge the trial court's finding that termination of her parental rights is in the children's best interests.

In order to terminate the parent-child relationship under section 161.001, a party must establish, by clear and convincing evidence, one or more of the acts or omissions enumerated under section 161.001(1) and that termination is in the best

7

interest of the child. TEX. FAM. CODE ANN. § 161.001. Both elements must be established, and termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

### Standard of Review

A parent's right to "the companionship, care, custody, and management" of her children is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982). The United States Supreme Court has emphasized that "the interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060 (2000). Likewise, the Texas Supreme Court has also concluded that "[t]his natural parental right" is "essential," "a basic civil right of man," and "far more precious than property rights." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, "[w]e strictly construe involuntary termination statutes in favor of the parent." *In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012).

8

Because termination of parental rights "is complete, final, irrevocable and divests for all time that natural right . . . , the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights." *Holick*, 685 S.W.2d at 20 (citing *Santosky*, 455 U.S. at 747, 102 S. Ct. at 1391). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon 2014); *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002). Because the standard of proof is "clear and convincing," the Texas Supreme Court has held that the traditional legal and factual standards of review are inadequate. *In re J.F.C.*, 96 S.W.3d at 256, 264–66.

In conducting a legal-sufficiency review in a parental-rights termination case, we must determine whether the evidence, viewed in the light most favorable to the finding, is such that the fact finder could reasonably have formed a firm belief or conviction about the truth of the matter on which DFPS bore the burden of proof. *See id.* at 266. In viewing the evidence in the light most favorable to the finding, we "must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so," and we "should disregard all evidence that a reasonable fact finder could have disbelieved or found to be incredible." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *In re J.F.C.*,

9

96 S.W.3d at 266). However, this does not mean that we must disregard all evidence that does not support the finding. *In re J.F.C.*, 96 S.W.3d at 266. Because of the heightened standard, we must also be mindful of any undisputed evidence contrary to the finding and consider that evidence in our analysis. *Id.* If we determine that no reasonable trier of fact could form a firm belief or conviction that the matter that must be proven is true, we must hold the evidence to be legally insufficient and render judgment in favor of the parent. *Id.*

In conducting a factual-sufficiency review in a parental-rights termination case, we must determine whether, considering the entire record, including evidence both supporting and contradicting the finding, a fact finder reasonably could have formed a firm belief or conviction about the truth of the matter on which DFPS bore the burden of proof. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We should consider whether the disputed evidence is such that a reasonable fact finder could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266–67. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* at 266.

*Endangering Conduct*

In her second issue, appellant argues that the evidence is legally and factually insufficient to support the termination of her parental rights as to each child under section 161.001(1)(E) because DFPS did not show that she engaged in a "conscious course of conduct that endangered the children's physical or emotional well-being."

A trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(1)(E). "Endanger" means to expose to loss or injury or to jeopardize. *Boyd*, 727 S.W.2d at 533. Danger to a child need not be established as an independent proposition and may be inferred from parental misconduct, even if the conduct is not directed at the child and the child suffers no actual injury. *Id.* Conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied). Further, violent criminal conduct by a parent can produce an environment that endangers the well-being of a child. *In re B.R.*, 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied). Termination under section 161.001(1)(E) must be based on more than a single act or omission

and requires a voluntary, deliberate, and conscious course of conduct by the parent that endangers the child's physical and emotional well-being. *In re J.W.*, 152 S.W.3d 200, 205 (Tex. App.—Dallas 2004, pet. denied); *In re A.S.*, 261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (explaining that subsection (D) concerns child's environment and subsection (E) concerns parent's conduct).

As to subsection (E), Porter, the sole witness at trial, testified as follows:

| | |
|---|---|
| [Counsel for DFPS]: | . . . . [T]here's a lot of—the house—her residence was found to be filthy; is that correct? |
| [Porter]: | Yes. |
| [Counsel for DFPS]: | And there's a lot of domestic violence in the house; is that correct? |
| [Porter]: | Correct. |
| | |
| [Counsel for DFPS]: | Okay. Do you feel like this type of conduct constitutes engaging in conduct which endangers the physical and emotional well-being of the children? |
| [Porter]: | Yes. |
| [Counsel for DFPS]: | Are you asking that her rights be terminated under E of 161.001? |
| [Porter]: | Yes. |
| . . . . | |
| [Counsel for DFPS]: | And you're aware of the fact that she failed that drug test; is that correct, tested positive for marijuana; is that correct? |
| [Porter]: | Correct. |

12

| [Counsel for DFPS]: | Again, that constitutes endangerment of the children; is that correct? |
|---|---|
| [Porter]: | Correct. |

DFPS asserts that Porter's testimony demonstrates that appellant "was the subject of prior [DFPS] referrals, lived in a filthy home[,] and was involved in domestic violence in her home prior to the removal of her children." It further asserts that it provided "undisputed conclusive proof establishing that [appellant] jeopardized her children's emotional or physical well-being in support of the trial court's finding under subsection (E)."

Porter did not, however, present any factual bases to support her conclusory testimony. Unsupported, conclusory opinions of a witness do not constitute evidence of probative force and will not support a judgment. *Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013) ("Bare, baseless opinions will not support a judgment even if there is no objection to their admission in evidence," and "such conclusory testimony cannot support a judgment."); *Williams v. Williams*, 150 S.W.3d 436, 450 (Tex. App.—Austin 2004, pet. denied) (concluding that caseworker's unsupported testimony, which constituted sole evidence at trial, did not support termination under subsection (E)).

Further, nothing in Porter's testimony demonstrates that appellant engaged in a "conscious course of conduct." *See In re J.W.*, 152 S.W.3d at 205. The only instance in the record relating to domestic violence is appellant's allegedly *false*

13

report that Father had assaulted her. Although Porter agreed that appellant had "failed that drug test," the date of the occurrence is not in the record and evidence of a single use does not demonstrate a conscious course of conduct. *See In re A.S.*, 261 S.W.3d at 86 (stating that evidence of single use of marijuana does not rise to conscious course of conduct). The evidence presented simply does not establish "a voluntary, deliberate, and conscious course of conduct" sufficient to support a finding under section 161.001(1)(E). *See In re J.W.*, 152 S.W.3d at 205; *Ruiz v. Tex. Dep't of Family and Protective Servs.*, 212 S.W.3d 804, 818 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Williams*, 150 S.W.3d at 450–51.

DFPS also asserts that the trial court's finding under subsection (E) is supported by the fact that the children were initially taken from appellant when she was arrested for filing a false report and was in jail for an unspecified reason at the time of trial. However, imprisonment alone does not constitute endangering conduct, although it may be a fact to consider on the issue of endangerment. *In re M.R.*, 243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.). "The State must show that the incarceration is a part of a course of conduct that is endangering the children." *Id.*

Although the record reveals, in passive voice, that appellant was "suspected" of having set fire to Father's house, no evidence was presented to prove the allegation. The record does not show that appellant was "suspected" by any

14

specific law enforcement agent or that she was arrested or formally accused of arson. The record shows only that DFPS stated, during announcements at the beginning of trial, "The mother is in jail." And there is no evidence demonstrating that appellant's incarceration was part of a course of conduct that endangered the children. *Cf. id.* (concluding that evidence of parent's incarceration, which had lasted twenty-six months of child's thirty-six-month life, had affected parent's ability to ensure that child was properly cared for and indicated course of conduct that endangered child).

Further, DFPS did not present any evidence that appellant placed her children with anyone, let alone anyone "who engaged in conduct which endangered [their] physical or emotional well-being." *See* TEX. FAM. CODE ANN. § 161.001(1)(E).

Viewing the evidence in the light most favorable to the trial court's findings, we conclude that the trial court could not have formed a firm belief or conviction that appellant engaged in conduct, or knowingly placed her children with persons who engaged in conduct, that endangered their physical or emotional well-being. *See In re J.F.C.*, 96 S.W.3d at 266. Accordingly, we hold that the evidence is legally insufficient to support the trial court's termination of appellant's parental rights under section 161.001(1)(E).

We sustain appellant's second issue.

*Failure to Support*

In her third issue, appellant argues that the trial court erred in terminating her parental rights under section 161.001(1)(F) because the evidence is legally and factually insufficient to support the termination of her parental rights as to each child under section 161.001(1)(F). DFPS, in its appellate brief, concedes that "there was insufficient evidence" to support termination under section 161.001(1)(F) and "abandons any argument as to that ground."

We sustain appellant's third issue.

*Constructive Abandonment*

In her fourth issue, appellant argues that the evidence is legally and factually insufficient to support the termination of her parental rights as to each child under section 161.001(1)(N) because there is no evidence regarding "what reasonable efforts DFPS undertook to return the children," she "constructively abandoned" the children, and regarding her inability to provide a safe environment.

A parent constructively abandons a child when (1) the child has been in the permanent or temporary managing conservatorship of the State or an authorized agency for not less than six months, (2) the State or the authorized agency has made reasonable efforts to return the child to the parent, (3) the parent has not regularly visited or maintained significant contact with the child, and (4) the parent has demonstrated an inability to provide the child with a safe environment. TEX.

16

FAM. CODE ANN. § 161.001(1)(N); *In re K.G.*, 350 S.W.3d 338, 353–54 (Tex. App.—Fort Worth 2011, pet. denied); *In re A.S.*, 261 S.W.3d at 88–89.

Regarding the third element, Porter testified on direct examination that, as of the time of trial in September 2013, appellant had not visited the children on a regular basis and had not "visited the children since March of 2013." On cross-examination, however, she testified as follows:

[Counsel for Appellant]: And appellant had been in contact with you after March, correct?

[Porter]: Correct.

[Counsel for Appellant]: She had been in contact with you all the way up to July 2013, correct?

[Porter]: Yes.

[Counsel for Appellant]: So isn't it true that [appellant] didn't constructively abandon these children because [she] was participating in services, she had visited the children, and she was in communication with you, correct?

. . . .

[Porter]: Yes.

On re-direct, Porter again testified that appellant had not visited the children since March and, therefore, had constructively abandoned the children.

"We strictly construe involuntary termination statutes in favor of the parent." *In re E.N.C.*, 384 S.W.3d at 802. Here, DFPS had the burden to establish by *clear and convincing evidence* that appellant had not regularly visited *or maintained significant contact with her children*. *See* TEX. FAM. CODE ANN. § 161.001(1)(N);

17

*In re J.F.C.*, 96 S.W.3d at 256, 264–66. Porter testified both that appellant had not visited the children from March 2013 until the time of trial in September 2013, and that she had visited them and was in contact with Porter up to July 2013. Notwithstanding whether appellant had visited the children, Porter testified that appellant maintained contact with her from March 2013 to July 2013. *See In re K.W.*, 138 S.W.3d 420, 432–33 (Tex. App.—Fort Worth 2004, pet. denied) (holding that parent's correspondence with caseworker demonstrated that he had not constructively abandoned his child under subsection (N)); *see also In re D.S.A.*, 113 S.W.3d 567, 574 (Tex. App.—Amarillo 2003, no pet.) (recognizing that incarcerated parent may nonetheless maintain significant contact with child through correspondence). *Cf. In re K.G.*, 350 S.W.3d 338, 355 (Tex. App.—Fort Worth 2011, pet. denied) (holding testimony that parent did not visit *or maintain contact* constituted legally sufficient evidence to support termination under subsection (N)).

Viewing the evidence in the light most favorable to the trial court's findings, we conclude that the trial court could not have formed a firm belief or conviction that appellant constructively abandoned the children. *See In re J.F.C.*, 96 S.W.3d at 266; *In re D.T.*, 34 S.W.3d at 633. Accordingly, we hold that the evidence is legally insufficient to support the trial court's termination of appellant's parental rights under section 161.001(1)(N).

We sustain appellant's fourth issue.

### *Failure to Comply with Court Order*

In her fifth issue, appellant argues that the evidence is legally and factually insufficient to support the termination of her parental rights as to each minor child under 161.001(1)(O) because "there is no court order admitted into evidence at trial that specifically establish[ed] the actions necessary" for appellant to obtain the return of her children.

Parental rights may be terminated when clear and convincing evidence establishes that a parent (1) has failed to comply (2) with the provisions of a court order that specifically stated the actions necessary for the parent to obtain the return of a child (3) who has been in the permanent or temporary managing conservatorship of DFPS for not less than nine months (4) as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child. TEX. FAM. CODE ANN. § 161.001(1)(O). Chapter 262 of the Family Code is entitled "Procedures in Suit by Governmental Entity to Protect Health and Safety of Child," and subchapter B provides the procedures that DFPS may employ in order to remove a child for abuse or neglect. TEX. FAM. CODE ANN. §§ 262.001–.309 (Vernon 2014).

Here, as to the second prong, DFPS "acknowledges" in its brief that an FSP pertaining to appellant "does not appear" in the record of any of the cases in this

appeal. It asserts, however, that the trial court's orders and transcripts of the prior proceedings in this case, which are contained in the clerk's and reporter's records on file in this appeal, prove that appellant was subject to a court-ordered FSP.

The clerk's record shows that on October 2, 2012, the trial court ordered appellant to comply with the requirements set out in an FSP and informed her that the actions listed in the FSP were "necessary to obtain return of the children." In its November 13, 2012 status order, the trial court "ordered that the [FSP] as to [appellant], filed with [the trial court] on or before the date of its order, [was] approved in full and incorporated into the order as if set out verbatim" and appellant was "ordered to timely comply." Further, the trial court's orders, issued July 23, 2013 and September 10, 2013, show that it evaluated appellant's compliance with the requirements of her FSP. And transcripts from status hearings have been filed in these appeals.

Appellant argues that the prior orders and transcripts cannot support termination of her parental rights under section 161.001(1)(O) because the orders and transcripts were not admitted into evidence at trial.

A termination finding under subsection (O) cannot be upheld where there is no court order that specifically establishes the actions necessary for the parent to obtain return of the child. *In re K.F.*, 402 S.W.3d 497, 504 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *In re M.D.C.*, No. 14-13-00414-CV, 2013 WL

5366326, at *3 (Tex. App.—Houston [14th Dist.] Aug. 27, 2013, no pet.) (mem. op.).

In *M.D.C.*, the parent asserted that the record was devoid of an FSP having been filed with the trial court or offered into evidence at trial. 2013 WL 5366326, at *3. The Fourteenth Court of Appeals, in holding the evidence legally and factually sufficient to support termination under subsection (O), noted that the clerk's record in each case contained an FSP, directing the parent to comply with specific actions, which the trial court incorporated into its temporary orders. *Id.* And the reporter's record revealed that the trial court took judicial notice of its file, including the FSPs. *Id.*

In *K.F.*, the parent argued that, although an FSP was in the clerk's record, it constituted "no evidence" because it was not admitted into evidence at trial and nothing reflected that the trial court took judicial notice of it. 402 S.W.3d at 504 (citing *In re C.L.*, 304 S.W.3d 512, 514, 516–17 (Tex. App.—Waco 2009, no pet.) (holding evidence insufficient to support termination under section 161.001(1)(O) because FSP and trial court's prior orders were not admitted into evidence; DFPS did not ask trial court to take judicial notice of any prior orders in its file or of any other matters; trial court did not announce in open court that it was taking judicial notice; and trial court did not recite in termination decree that it had done so)). In *M.D.C.*, the Fourteenth Court of Appeals, in concluding that the evidence was

21

legally and factually sufficient to support termination under subsection (O), declined to follow *C.L.*, holding instead that it may be "presum[ed] that the trial court took judicial notice" of the existence of a court order regarding an FSP "without any request being made and without any announcement that it has done so." *Id.*

Here, unlike in *M.D.C.* and *K.F.*, DFPS concedes that there is no FSP pertaining to appellant in the clerk's records in these appeals and none were admitted into evidence at trial. Even if we were to assume that the trial court had taken judicial notice of its prior orders, none of the orders specifically state any of the actions necessary for appellant to obtain the return of her children. The orders state that they incorporate FSPs, but no FSPs appear in the records in these appeals.

At trial, as to termination under subsection (O), Porter testified only broadly on direct examination as follows:

| [Counsel for DFPS]: | Has she completed her court-ordered services? |
|---|---|
| [Porter]: | No. |
| [Counsel for DFPS]: | Are you asking [that] her rights be terminated under [161.001(1)(O)] in that she failed to complete court-ordered services necessary for the return of the children? |
| [Porter]: | Yes. |

On cross-examination, Porter testified regarding various services that appellant *had* completed:

> [Counsel for Appellant]: With regards to the mother, isn't it true that [she] has completed some of the court-ordered services in this case?
>
> [Porter]: She's completed some of the services.
>
> [Counsel for Appellant]: Okay. And would some of those services be that she completed the psychosocial assessment?
>
> [Porter]: Yes.
>
> [Counsel for Appellant]: Did she also complete her parenting classes?
>
> [Porter]: Yes.
>
> [Counsel for Appellant]: Did she also complete domestic violence classes.
>
> [Porter]: Yes.
>
> [Counsel for Appellant]: Did she complete a substance abuse assessment?
>
> [Porter]: Yes.
>
> [Counsel for Appellant]: And did she also participate in individual therapy?
>
> [Porter]: She did.

Porter also testified that appellant had participated in random drug testing, the results of which were negative. Finally, on re-direct, Porter testified as follows:

> [Counsel for DFPS]: Has the mother completed all of her court-ordered services:
>
> [Porter]: Not all of them, no.
>
> [Counsel for DFPS]: So you're asking that her rights be terminated under [161.001(1)(O)]?
>
> [Porter]: Yes.

And although Porter testified that appellant had tested positive for marijuana "in the past," no time frame was offered.

Porter's testimony simply does not specify any specific action required by a court-ordered FSP that appellant failed to take. Again, we must "strictly construe involuntary termination statutes in favor of the parent." *In re E.N.C.*, 384 S.W.3d at 802. Section 161.001(1)(O) includes "a specificity requirement," and DFPS is required to "support its allegations against [appellant] by clear and convincing evidence; conjecture is not enough." *In re D.N.*, 405 S.W.3d 863, 878–79 (Tex. App.—Amarillo 2013, no pet.) (citing *In re E.N.C.*, 384 S.W.3d 796, 810 (Tex. 2012)); *see also* TEX. FAM. CODE ANN. § 161.001(1)(O) (requiring trial court's order to "specifically" state actions necessary to obtain return of children).

DFPS requests that we abate these appeals so that it may attempt to locate or substitute the FSPs in each case. Generally, we may not evaluate a trial court's rulings based on materials that were not before it at the time that it ruled. *Hamm v. Millennium Income Fund, L.L.C.*, 178 S.W.3d 256, 272 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citing *Methodist Hosps. of Dallas v. Tall*, 972 S.W.2d 894, 898 (Tex. App.—Corpus Christi 1998, no pet.) ("It is axiomatic that an appellate court reviews actions of a trial court based on the materials before the trial court at the time it acted.")). And even if the FSPs were located or substituted and the records supplemented, such that the actions appellant was required to take

24

were demonstrated, Porter did not testify regarding any specific actions that, by the time of trial, appellant had failed to take.

Given the record presented to us, we cannot determine what specific requirements were placed on appellant or ascertain how, by the time of trial, she failed to comply with any specific requirements. Thus, we cannot conclude that DFPS presented clear and convincing evidence that supports the trial court's finding that appellant has failed to comply with the provisions of a court order "that specifically established the actions necessary for [her] to obtain the return of [her children]." *See* TEX. FAM. CODE ANN. § 161.001(1)(O).

Viewing the evidence in the light most favorable to the trial court's findings, we conclude that the trial court could not have formed a firm belief or conviction that appellant failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of her children. *See In re J.F.C.*, 96 S.W.3d at 266. Accordingly, we hold that the evidence is legally insufficient to support termination of appellant's parental rights under section 161.001(1)(O).

We sustain appellant's fifth issue.

### Conclusion

We reverse the portion of the trial court's decree terminating appellant's parental rights in each case and render judgment denying DFPS's petition for

termination of appellant's parental rights in each case. We dismiss as moot appellant's challenge to the trial court's temporary orders. Because appellant does not challenge it here, the portion of the trial court's final decree naming DFPS the sole managing conservator of each child remains intact. *See In re J.A.J.*, 243 S.W.3d 611, 613 (Tex. 2007) (concluding that reversal of termination order does not affect unchallenged conservatorship determination).


                                                Terry Jennings
                                                Justice

Panel consists of Justices Jennings, Higley, and Sharp.